UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 12-10876-RGS

IKNATONRHAJIK NZADDI

v.

DEPARTMENT OF CORRECTIONS, et al.

MEMORANDUM AND ORDER

May 18, 2012

STEARNS, D.J.

For the reasons set forth below, the Court: (1) denies plaintiff's Motion for Temporary Restraining Order and/or Preliminary Injunction; (2) allows plaintiff's Motion to Proceed in forma pauperis, (3) directs the Clerk to issue summons for service of defendants Dinardo and Wood with all costs of service to be advance by the United States; (3) within forty-two (42) days of the date of this Memorandum and Order, Nzaddi shall file a certified prison account statement; and (4) within forty-two (42) days of the date of this Memorandum and Order, Nzaddi shall demonstrate good cause why the claims against defendants Coakley, Spencer, Ryan, Brockelman, Murphy or the Director of Treatment should not be dismissed for the reasons stated below.

BACKGROUND

On May 10, 2012, Plaintiff Iknatonrhajik Nzaeddi, a self-described Native-American and G.I.D. diagnosed inmate,[1] filed a Complaint, Application to Proceed Without Prepayment of Fees and Motion for Temporary Restraining Order and/or Preliminary Injunction. See Docket. Plaintiff is serving a life-sentence and was recently transferred from MCI Shirley (Medium) to Bridgewater State Hospital for a 30 day observation under

---

[1] In light of the allegation that Plaintiff has Gender Identity Disorder, the Court will refer to Plaintiff by feminine pronouns.

G.L. 123, § 18(a).

Plaintiff alleges that she is a practicing Baha'i and that the defendants denied her request for meals that are "hermetically sealed and blessed by the (Union of Orthodox Rabbis) as they duly follow the revelations of the Prophets." See Docket No. 3. Named as defendants are (1) Martha Coakley, Attorney General for the Commonwealth of Massachusetts; (2) Luis S. Spencer, Commissioner of Corrections; (3) Kelly A. Ryan, Superintendent of MCI Shirley (Medium); (4) Karen DiNardo, Deputy Superintendent of Programs and Classification at MCI Shirley (Medium); (5) Christine Brockelman, Director of Treatment at MCI Shirley (Medium); (6) Robert Murphy, Superintendent of Bridgewater State Hospital; (7) Martin Wood, Deputy Superintendent at Bridgewater State Hospital; and (8) an unnamed Director of Treatment at Bridgewater State Hospital. See Compl., Docket No. 1.

Plaintiff alleges that "she is being clearly treated differently than other DOC inmates [that have received kosher meals]" and she has "exhausted all institutional remedies in an attempt to resolve this situation; however, the Defendant, DOC Commissioner Luis S. Spencer, and all other subordinate - defendants have repeatedly displayed incompetence, unprofessionalism and insensitivity with regards to the civil, as well as the criminal - statutes of this Commonwealth." Id. With the Complaint, Nzaddi attaches several documents as exhibits. Id.

## DISCUSSION

I. Motion to Proceed In Forma Pauperis

Plaintiff filed a Motion to Proceed in forma pauperis that includes the first page of Form AO 240 as well as her signature under the penalties of perjury. However, Plaintiff has not submitted a certified copy of her prison account statement. The court will grant the motion notwithstanding that Nzaddi failed to submit a certified prison account statement as

2

required under 28 U.S.C. § 1915. Because Nzaddi is a prisoner, she is obligated to make payments toward the filing fee pursuant to 28 U.S.C. § 1915(b), but this court cannot assess the fee without the certified prison account statement. Nzaddi will be granted additional time to file a certified prison account statement so that the court can assess Nzaddi's filing fee obligation.

 II. Review

When a plaintiff seeks to bring an action without prepayment of the filing fee, summonses do not issue until the court reviews the operative complaint and determines that it satisfies the substantive requirements of 28 U.S.C. § 1915. Similarly, under 28 U.S.C. § 1915A, prisoner complaints in civil actions that seek redress from a governmental entity or officers or employees of a governmental entity are also subject to screening. Both § 1915 and § 1915A authorize federal courts to dismiss a complaint if the claims therein are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii); 28 U.S.C. § 1915A(b); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Denton v. Hernandez, 504 U.S. 25, 32-33 (1992); Gonzalez-Gonzalez v. United States, 257 F.3d 31, 37 (1st Cir.2001).

In conducting a review of a complaint filed by a litigant proceeding *in forma pauperis*, the court reads plaintiff's complaint with "an extra degree of solicitude," Rodi v. Ventetuolo, 941 F.2d 22, 23 (1st Cir.1991), due to her pro se status, see id.; see also Strahan v. Coxe, 127 F.3d 155, 158 n. 1 (1st Cir. 1997) (noting obligation to construe pro se pleadings liberally) (citing Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595-96 (1972)).

 III. Plaintiff's Section 1983 Claim

Section 1983 creates a cause of action against those who, acting under color of

State law, violate federal constitutional or statutory law. See 42 U.S.C. § 1983.[2] In order for a defendant to be held liable under Section 1983, his or her conduct must have caused the alleged constitutional or statutory deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir.), cert. denied, 522 U.S. 819 (1997).

The First Amendment's religion clauses provide that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. The first clause, the Establishment Clause, mandates the separation of church and state. The second clause, the Free Exercise Clause, requires that government respect and not interfere with the religious beliefs and practices of those protected by the United States Constitution. See Cutter v. Wilkinson, 544 U.S. 709, 719 (2005).

A prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974); see also Bell v. Wolfish, 441 U.S. 520, 545 (1979) ("prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison."). However, the Supreme Court has held that a prisoner's sincerely held religious beliefs must yield, if contrary to prison regulations that are reasonably related to legitimate penological interests. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 351-352 (1987) (finding that the Constitution does not require the prison to sacrifice legitimate penological objectives to satisfy an inmate's desire to exercise his religion so long as an inmate is not deprived of all forms of religious exercise). Free

---

[2] 42 U.S.C. § 1983 provides that:
Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

4

exercise claims brought by prisoners are "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir.2003) (quoting O'Lone, 482 U.S. at 349); see also Shaw v. Murphy, 532 U.S. 223, 227-229 (2001).

Here, Nzaddi alleges that she has been denied kosher meals at MCI Shirley (Medium) and the Bridgewater State Hospital. Nzaddi's complaint and exhibits specifically mention and/or concern defendants Karen DiNardo at MCI Shirley and Martin Wood at the Bridgewater State Hospital. "[C]ourts have generally found that to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights." McEachin v.. McGuinnis, 357 F.3d 197, 203 (2d Cir.2004) (citing cases). Nzaddi notified DiNardo and Wood and they apparently failed to remedy the alleged violation. These allegations suffice to allow plaintiff's claims to proceed against defendants DiNardo and Wood at this time.

Even with a liberal reading of the complaint, Ndazzi does not allege facts from which the court may infer that the remaining six defendants were directly involved in the alleged denial of religious meals. A plaintiff must plead the personal involvement of each defendant in a violation of Section 1983 because there is no respondeat superior liability in Section 1983 cases. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); CeperoRivera v. Fagundo, 414 F.3d 124, 129 (1st Cir.2005) ("[O]nly those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable [in a § 1983 action]."). Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The law in this Circuit before Iqbal was that a plaintiff may state a claim against a supervisory defendant in a Section 1983 case by depicting "a scenario that would permit

a fact-based inference that [the supervisory defendants] were guilty of 'conduct that amount[ed] to condonation or tacit authorization' of wrongdoing." Rogan v. Menino, 175 F.3d 75, 78 (1st Cir. 1999) (citations omitted). A supervisor must be either "a primary actor involved in, or a prime mover behind, the underlying violation." Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1st Cir.1999). There must be "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization" to the violation alleged. Id. at 44.

Here, Plaintiff has not identified any specific actions taken by defendants Coakley, Spencer, Ryan, Brockelman, Murphy or the Director of Treatment. See Feliciano v. DuBois, 846 F. Supp. 1033, 1045 (D. Mass. 1994) ("[A] defendant supervisor cannot be held liable for the constitutional violations of a subordinate merely by virtue of the defendant's status as supervisor"). Nzaddi simply alleges that these six defendants are liable as supervisors. She contends that defendant Coakley is liable because she is "the highest ranking legal-officer for the Commonwealth. Compl., p. 2. She alleges that Spencer is "the Supervisor directly responsible for securing the plaintiff's rights." Id. As for Ryan, she alleges that she is "subordinate to the Commissioner and is responsible for the Plaintiff's appropriate care and custody. Id. As to Brockelman, she alleges that she has "multiple responsibility with regard to all religious and dietary matters, as well as with programs, school, library, mental health, correctional program officers (CPO's), etc." Id. at p. 2. As to Murphy, she alleges that he is a supervisor who is "responsible for training and overseeing other subordinate-defendants." Id. Although Nzaddi does not identify the Director of Treatment by name, she alleges that the Director is "designated to supervise and train those involved in protecting patients' rights with practicing their religion and receiving apapropriate religious dietary foods and/or medical diets." Id. Nzaddi does not allege that these six defendants have been notified of the constitutional violations alleged

here. It appears they are named as defendants simply because they are supervisory officials. Accordingly, the claims against defendants Coakley, Spencer, Ryan, Brockelman, Murphy or the Director of Treatment are subject to dismissal.

    IV.    <u>Motion for Temporary Restraining Order and/or Preliminary Injunction</u>

To obtain the extraordinary remedy of preliminary injunctive relief under Fed. R. Civ. P. 65, a plaintiff must show that: (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest. <u>Voice of The Arab World v. MDTV Med. News Now, Inc.</u>, 645 F.3d 26, 32 (1st Cir. 2011). Likelihood of success on the merits is the critical factor in the analysis. <u>Weaver v. Henderson</u>, 984 F.2d 11, 12 (1st Cir. 1993) (citations omitted).

A party seeking an ex parte temporary restraining order must allege that her injury or loss is "immediate and irreparable" and will occur before the adverse party or that party's attorney can be heard in opposition to the motion. Fed. R. Civ. P. 65(b)(1)(A). Even where a plaintiff makes a showing of "immediate and irreparable" injury, the court cannot issue a temporary restraining order without notice to the adverse parties unless the plaintiff "certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).

Here, Nzaddi seeks a diet in accordance with her Baha'i beliefs. Nzaddi has not addressed each of the factors the court must consider in determining whether injunctive relief is appropriate. She does not allege that "immediate and irreparable" harm will occur if she is not provided injunctive relief. Nzaddi has not certified her efforts to give notice to the defendants of her motion for injunctive relief or explained why such notice should not be required. These failures are grounds, in and of themselves, for denial of the motion. <u>See</u>, <u>e.g.</u>, <u>Thompson v. Ramirez</u>, 597 F. Supp. 726, 726 (D. P.R. 1984) (denying

7

temporary restraining order, in part, where there had been no certification to court in writing, of the efforts, if any, of notification to adverse parties). Thus, the court will deny Nzaddi's request for Temporary Restraining Order and/or Preliminary Injunction without prejudice.

ORDER

Based on the foregoing, it is hereby Ordered that*:*

1. Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Docket No. 2) is GRANED and the assessment of the filing fee pursuant to 28 U.S.C. § 1915(b) is DEFERRED;

2. Within forty-two (42) days of the date of this Memorandum and Order, Nzaddi shall submit a certified prison account statement for the six-month period preceding the filing of the Complaint. A copy of this Memorandum and Order shall be sent to the Treasurer's Offices at MCI- Shirley (Medium) and Bridgewater State Hospital with the request that they provide Nzaddi, and/or this court, with a certified prison account statement reflecting the average monthly balance and average monthly deposits for the six-month period preceding May 8, 2012. Upon receipt of the certified prison account statement, an Order shall issue assessing Nzaddi's filing fee obligations under the *in forma pauperis* statute. Failure by Nzaddi to comply with this directive to submit a certified prison account statement may result in a dismissal of this action.

3. The Clerk shall issue summonses for defendants Dinardo and Wood.

4. The United States Marshal shall effect service on defendants Dinardo and Wood as directed by the plaintiff, and shall advance the costs of service;

5. Plaintiff's Motion for a Preliminary Injunction and Temporary Restraining Order (Docket No. 3) is DENIED without prejudice; and

6. Within forty-two (42) days of the date of this Memorandum and Order, Nzaddi shall demonstrate good cause, in writing, why the claims against defendants Coakley, Spencer, Ryan, Brockelman, Murphy or the Director of Treatment should not be dismissed for the reasons stated above.

SO ORDERED.

 /s/ Richard G. Stearns
 UNITED STATES DISTRICT JUDGE